Estate of Charles E. Lipscomb, Deceased, The Plainfield Trust Company, Transferee and Trustee v. Commissioner.
Estate of Lipscomb v. Commissioner
Docket No. 267.
United States Tax Court
1944 Tax Ct. Memo LEXIS 241; 3 T.C.M. (CCH) 541; T.C.M. (RIA) 44171; May 20, 1944
*241 A. Harding Paul, Esq., 730 Munsey Bldg., Washington, D.C., for the petitioner. Arthur Groman, Esq., for the respondent. STERNHAGEN Memorandum Opinion STERNHAGEN, Judge: The Commissioner determined a deficiency of $9,582.07 in estate tax. The petitioner assails the inclusion in gross estate of $19,508.31, the value one year after death of a possible reversionary interest under a trust created by decedent during his lifetime. By amended answer the respondent alleges that instead of $19,508.31 the value was $65,333.20 or at least $39,882.87. The facts are all stipulated. [The Facts] The estate tax return was filed in Baltimore, Maryland. Charles E. Lipscomb, of Easton, Maryland, died July 5, 1937, aged 67, and The Plainfield Trust Company is transferee and trustee of part of his estate. He was survived by his wife, May Blaine Lipscomb, born December 19, 1876; his daughter, Rebekah Blaine Lipscomb White (now Whiteley), born July 18, 1904, and his granddaughter - daughter of Rebekah - Becky Ann White, born December, 1930. The executors elected to use the value of the estate one year after death. Under date of May 6, 1924, the decedent established a trust, naming The Plainfield *242 Trust Company as trustee. "To take possession, control and management of all and singular the said property and to invest and reinvest the same and keep the same invested and to collect and receive the said profits, dividends and income thereof, and after paying all proper charges and expenses of the trust including the commissions of the Trustee as is hereinafter fixed, to pay and to apply the remainder of said interest, profits, dividends and income in quarterly payments, however, to the use of May Blaine Lipscomb during her natural life; upon the death of the said May Blaine Lipscomb, then the entire net interest, profits, dividends and income from the principal of this trust fund shall be paid over in quarterly installments to Rebekah Blaine Lipscomb during her lifetime. And upon the death of both the said May Blaine Lipscomb and the said Rebekah Blaine Lipscomb, then to pay over the principal of said trust fund to the issue of the said Rebekah Blaine Lipscomb then surviving per stirpes and not per capita. Should however there be no issue of the said Rebekah Blaine Lipscomb surviving at the time of the death of both May Blaine Lipscomb and Rebekah Blaine Lipscomb, then and in *243 that event, to assign, transfer and deliver the corpus of said trust unto the Grantor if he be then living or if he be then dead to The County School Board of Prince William County, Virginia, or to the successor of the County School Board of Prince William County, Virginia, as established by act of the General Assembly of Virginia, approved March 24, 1922, page 737, for the use and benefit of the white schools of the Township of Manassas, Virginia." The value of the corpus of the trust on the date of decedent's death was $71,634.45 and one year after death was $65,333.20. The value (as adjusted) one year after the date of death of an estate in remainder or reversion after the life estate of May Blaine Lipscomb was $39,882.87; the value after the life estates of May Blaine Lipscomb and Rebekah Blaine Lipscomb White (Whiteley) was $19,508.31. The actuarial value of a remainder interest in the trust after the death of the last to die of two persons, aged 61 (May) and 33 (Rebekah), if the death of the last ot die occurs after the death of a person aged 7 (Becky Ann), was $4,394.06 at the decedent's death and $4,006.47, as adjusted one year after decedent's death. All of these are now *244 living. The daughter Rebekah was first married on May 28, 1927, and was married and living with her husband on July 5, 1937. In explanation of the inclusion of the aforesaid $19,508.31 in the gross estate, the Commissioner in the notice of deficiency said that it represents the value of the remainder interest in the trust created by the decedent during his lifetime which value is held to be includible in the gross estate as a transfer intended to take effect in possession or enjoyment at or after the decedent's death, or as a possible reverter, under the provisions of Section 302 (c) of the Revenue Act of 1926, as amended. The argument to support this holding is predicated primarily on , and on the Board's decision in . The latter decision has been reversed in . Following the latter decision in substantially similar circumstances as those in the present proceeding, this Court in , gave full consideration to *245 the meaning of the Hallock case and the Lloyd case, and held that the express reservation of the possible reversion to the settlor's estate in the event of the death of her son leaving no issue, was not a transfer to take effect in possession or enjoyment at or after her death. This holding was followed on the same day in , the facts of which were even more closely like the present case. Following the Biddle and Allen cases, it is held in this proceeding that the transfer made by this decedent on May 6, 1924, in trust, the income to be paid to his wife during her life, and thereafter to his daughter for her life, the principal then to go to her issue, if any living, and to the settlor if there then be no survivors of her, is not a transfer to take effect in possession or enjoyment at or after his death. The Commissioner was in error in including any amount as the value of the trust property in the decedent's gross estate. Since the determination includes other items. Decision will be entered under Rule 50.